OIL, CHEMICAL AND ATOMIC WORK-
ERS INTERNATIONAL UNION,
LOCAL 7–1, Plaintiff–Appellee,

v.

AMOCO OIL COMPANY,
Defendant–Appellant.

No. 89–1051.

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1989.

Decided Aug. 25, 1989.

Rehearing and Rehearing In Banc
Denied Oct. 11, 1989.

Stephen A. Yokich, Daniel I. Koen, Cornfield & Feldman, Chicago, Ill., for plaintiff-appellee.

Steven H. Adelman, Gloria M. Longest, Keck, Mahin & Cate, Chicago, Ill., Joel C. Levy, Terence M. Austgen, Michael O. Martin, Singleton, Levy & Crist, Highland, Ind., for defendant-appellant.

Before WOOD, Jr., MANION, and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal involves the arbitrability of a dispute between Amoco Oil Company (Amoco) and the Oil, Chemical and Atomic Workers International Union, Local 7–1 (Union) regarding the contracting out of certain work previously performed by bargaining unit employees at Amoco's Whiting, Indiana refinery. The district court granted summary judgment to compel arbitration in favor of the Union. Amoco appeals, claiming that under the parties' collective bargaining agreement it was not obligated to arbitrate contracting out disputes. We reverse the district court's grant of summary judgment to the Union and remand to the district court with instructions to enter summary judgment in favor of Amoco.

## I. FACTUAL BACKGROUND

Amoco and the Union are parties to a collective bargaining agreement governing the hours, wages, working conditions, and terms of employment of bargaining unit Union employees in Amoco's Whiting Refinery. Amoco has, for many years, used outside contractors to perform a variety of maintenance and labor tasks at the Whiting Refinery. The practice of an employer hiring independent contractors to perform work instead of using bargaining unit employees is known as "contracting out."

We begin with a summary of the history of disputes between Amoco and the Union surrounding Amoco's practice of contracting out. In 1960, the Union brought an action to compel arbitration over Amoco's decision to contract out certain maintenance and repair work at the Whiting Refinery. Based upon Amoco's history of contracting out and the bargaining history of the parties, this court found that the collective bargaining agreement did not require arbitration over the contracting out dispute. *Independent Petroleum Workers of America, Inc. v. Standard Oil Co.*, 275 F.2d 706 (7th Cir.1960). In 1963, the Union again sought to compel arbitration of a contracting out dispute. This court again concluded that Amoco was not contractually obligated to arbitrate contracting out disputes. *Independent Petroleum Workers of America, Inc. v. American Oil Co.*, 324 F.2d 903 (7th Cir.1963), *aff'd* 379 U.S. 130, 85 S.Ct. 271, 13 L.Ed.2d 333 (1964).[1]

In subsequent contract negotiations the Union unsuccessfully sought restriction on Amoco's right to contract out, or in the alternative, provision for arbitration of contracting out disputes. The Union has filed unfair labor practice charges regarding contracting out at the Whiting Refinery and in each case the NLRB Regional Director has refused to issue a complaint on the charge. The Union has also filed over fifty grievances concerning contracting out disputes over the past twenty-five years. Amoco has consistently maintained that it is not contractually obligated to arbitrate contracting out issues and has refused to submit to arbitration.

The Union points to an instance in which it claims Amoco did arbitrate a contracting out dispute in 1974. Amoco had employed an independent contractor to recondition barrels. Normally the warehousemen in the barrel department brought the barrels to the truck. However, on one particular Saturday Amoco had failed to assign warehousemen to do the work and the contrac-tor's employees had to do their own loading. The Union filed a grievance over Amoco's failure to assign the loading work to a bargaining unit employee and Amoco agreed to arbitrate the dispute. The Union points to Amoco's voluntary arbitration of this 1974 dispute in asserting the arbitrability of the grievance in the instant case.

The dispute at issue here arose in November 1986 when Amoco began using an outside contractor to distribute toolboxes at the refinery on Sundays. Previously, Amoco had assigned this task to bargaining unit employees on an overtime basis. The Union then filed a grievance asserting that the contracting out of this work constituted a violation of the collective bargaining agreement and demanding that Amoco pay equipment handlers eight hours of overtime for every Sunday that Amoco contracted out the toolbox distribution work. Amoco denied the grievance and the Union requested arbitration. Amoco refused to arbitrate and asserted that it has the right to contract out work which does not reduce the workforce and that such contracting out decisions are not subject to the arbitration clause in the collective bargaining agreement.

When Amoco refused to arbitrate, the Union then filed suit to compel arbitration under the collective bargaining agreement pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Amoco and the Union both moved for summary judgment. In granting the Union's motion for summary judgment, the district court held that the arbitration clause may be susceptible to an interpretation that covers the contracting out dispute. Amoco appeals.[2]

## II. ANALYSIS

We review *de novo* the district court's entry of summary judgment. *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 354 (7th Cir.1988). Summary judgment should only be granted when there are no genuine

---

1. Although the names differ, it is uncontested that the parties in both prior cases are the same parties currently before this court.

2. The jurisdiction of the district court was based upon 29 U.S.C. § 185 and 28 U.S.C. § 1331. This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

584

issues of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing an entry of summary judgment, we view the record and the inferences drawn from it in the light most favorable to the nonmoving party. *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 937 (7th Cir.1989).

The first issue is whether this court's decisions in *Standard Oil* and *American Oil* have a preclusive effect upon the present action.[3] Amoco argues that the doctrine of collateral estoppel should bar the Union's current litigation. The district court concluded that the two previous decisions do not bar the Union from bringing the present claim because the issue of the application and interpretation of the 1974 award was not and could not have been raised or litigated in the prior cases.

■ The premise underlying the doctrine of collateral estoppel is that an issue should be adjudicated only once as between the same parties and their privies. 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice,* ¶ 0.443[1] (2d ed. 1988). Before collateral estoppel may be applied to preclude the litigation of an issue, the following elements must be present: (1) the party against whom the estoppel is asserted was a party to the prior adjudication; (2) the issue upon which the estoppel is based was actually litigated and decided on the merits in the prior suit; (3) the determination made of the issue was necessary to the resolution of the prior action; and (4) the issues in both proceedings must be the same. *County of Cook v. Midcon Corp.*, 773 F.2d 892, 898 (7th Cir.1985).

■ The Union has based its present complaint on the arbitrability of the application and interpretation of a 1974 arbitration award. The 1974 award is viewed by the Union as an award concerning contracting out and therefore it seeks to arbitrate the current contracting out dispute based upon that award. The issue of the application and interpretation of the 1974 arbitration award could not have been litigated in

the earlier cases. Therefore the district court properly found that the Union is not barred from bringing the present claim based upon the doctrine of collateral estoppel.

The central issue is whether the collective bargaining agreement between the parties requires Amoco to arbitrate the contracting out grievance underlying this action. The principles governing the arbitrability of disputes between a union and a company under collective bargaining agreements are well-established. *See United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (collectively referred to as the *Steelworkers Trilogy* ). The Supreme Court recently reaffirmed these principles in *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

■ The foundational principle derived from the *Steelworkers Trilogy* is that the duty to submit a dispute to arbitration is contractual and therefore a party cannot be compelled to arbitrate a dispute when he has not agreed to do so. *AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. at 1418. The second principle is that the question of whether the parties have agreed to submit a particular dispute to arbitration is an issue to be determined by the courts, not the arbitrator. *Id.* at 649, 106 S.Ct. at 1418–19. The third principle courts must follow in deciding the issue of arbitrability is to determine *only* whether the grievance is arbitrable. The court is not to rule on the potential merits of the underlying grievance, even if it appears to the court to be frivolous. 475 U.S. at 649, 106 S.Ct. at 1418–19. Finally, when the contract contains an arbitration clause there is a presumption of arbitrability unless the court determines "with positive assurance that

---

**3.** We do not address the broader issue of the preclusive effect of the prior decisions of this court on contracting out issues generally.

the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1353.

■ As an initial matter, we address the argument advanced by the Union that the arbitrator, not the courts, should determine the arbitrability of the dispute at issue. The Union relies on *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 860 F.2d 1420 (7th Cir.1988) in support of its position. In *Chicago Sun–Times*, this court held that procedural issues such as standing or the timeliness of filing a grievance "are for the arbitrator, so long as the *subject matter* of the dispute is within the arbitration clause." *Id.* at 1424 (emphasis in original). *See also, International Assoc. of Machinists and Aerospace Workers, Progressive Lodge No. 1000 v. General Elec. Co.*, 865 F.2d 902, 904 (7th Cir.1989) ("the arbitrator, like any other adjudicator, is empowered to decide whether the parties have taken whatever procedural steps are required to preserve their right to arbitrate a particular dispute").

While we agree with the Union's contention that "procedural arbitrability" is within the province of the arbitrator, we cannot characterize as procedural the arbitrability dispute at issue here. On the contrary, the issue here is whether the subject matter of the grievance falls within the ambit of the arbitration clause. In *AT & T Technologies*, the Supreme Court stated that: "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." 475 U.S. at 649, 106 S.Ct. at 1418. Therefore we conclude that the arbitrability of the grievance in this case is a proper subject for our determination.

■ We now turn to the issue of whether Amoco is contractually obligated to arbitrate the grievance in this case under the terms of the collective bargaining agreement. Article II, Section 2.15(A)(2) of the parties' 1986 collective bargaining agreement provides:

A. Questions which may be referred to arbitration shall be limited to:

\* \* \* \* \* \*

2. Questions directly involving or arising from applications, interpretations or alleged violations of the terms of arbitration awards and written agreements not incorporated in this Agreement.

The Union contends that the issue in the instant dispute directly involves or arises from the application or interpretation of the 1974 arbitration award and is therefore arbitrable under Section 2.15(A)(2). Amoco argues that the grievance at issue here is not directly related to the 1974 award and thus the court should not compel arbitration.

Since we have already determined that the issue of arbitrability in this case is one for the judiciary, we must now apply the remaining principles of the *Steelworkers Trilogy* to the facts of this case. The fundamental principle is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1353. Parties to a collective bargaining agreement are not required to include an arbitration clause, but if an arbitration clause is included, an employer cannot be compelled to arbitrate a grievance that is not within the scope of the arbitration clause. *International Assoc. of Machinists*, 865 F.2d at 904.

The district court concluded that resolution of the present dispute between the parties was dependent upon the interpretation of the 1974 award and that therefore under section 2.15(A)(2) of the collective bargaining agreement the grievance at issue must be arbitrated. We believe that this conclusion is erroneous. Upon close scrutiny of the relationship between the 1974 award and the instant dispute, it appears to us that the present grievance does not directly involve or arise from application or interpretation of the prior award.

586

The grievance over which the Union now seeks to compel arbitration involves a classic contracting out situation. Amoco began using an outside contractor to distribute toolboxes at the refinery on Sundays. This task had previously been assigned to bargaining unit employees on an overtime basis. Through contracting out, this work could be done on a non-overtime basis by the contractor's laborers. When the Union filed a grievance, Amoco maintained its position that it was not contractually obligated to arbitrate contracting out disputes and refused to submit to arbitration.

In contrast, the grievance that Amoco voluntarily arbitrated in 1974 involved a very different scenario. Amoco had contracted out barrel reconditioning work at the refinery. Ordinarily, warehousemen in the barrel department brought the barrels to the truck. On October 23, 1973, a Saturday, Amoco failed to assign warehousemen to work and therefore the barrel reconditioner's employees retrieved the barrels. The Union filed a grievance, Amoco voluntarily submitted to arbitration, and the arbitrator upheld the Union's grievance. Notably, the Union's grievance did not contest the *contracting out* of the barrel reconditioning work, but merely the failure of Amoco to assign warehousemen to deliver the barrels to the reconditioning contractor on one particular day.

We believe that the Union has mischaracterized the 1974 arbitration award as one involving a contracting out dispute. The dispute focused on Amoco's failure to assign warehousemen on one particular day to move barrels. Due to this failure, the outside contractor's employees loaded the barrels themselves. Amoco did not contract out the loading of the barrels; it failed to assign a bargaining unit employee to the task. This situation is distinguishable from the toolbox distribution dispute in which Amoco made a considered decision and entered into a contract with an independent contractor for the performance of a specific function on a weekly basis.

The Union argues that there is "similarity" between the issues involved in the 1974 award and the present grievance. This ar-gument is unpersuasive because the parties did not contract to arbitrate questions with some similarity to prior awards. The arbitration clause of the collective bargaining agreement is more narrowly drawn to restrict arbitrable disputes to those which are "directly" related to a prior award. We do not find the requisite direct relationship between the 1974 arbitration award and the toolbox distribution grievance sufficient to support an order to compel arbitration.

The Union contends that only an arbitrator may interpret or apply a prior arbitration award and therefore this court may not look to the 1974 award in determining arbitrability. However, it is a proper function of this court to interpret the collective bargaining agreement to determine if the parties have agreed to submit a particular dispute to arbitration. *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418–19. To assess arbitrability we must interpret the contract provision which states that questions become arbitrable when they "directly" involve or arise from applications or interpretations of arbitration awards. This requires us to analyze the prior arbitration award to determine whether it bears a direct relationship to the grievance at issue. In our analysis we are therefore not evaluating the merits of the grievance at issue, but merely adjudicating arbitrability.

The language of the 1974 arbitration award itself provides further evidence that the award was not directly applicable to contracting out disputes. In upholding the Union's grievance, the arbitrator found that Amoco violated the contract by failing to assign a warehouseman. Additionally, the award was expressly limited "to the specific instance which occurred October 27, 1973" and the arbitrator further stated that "[t]he evidence indicates that the Company [Amoco] has and does, in other situations, subcontract bargaining unit work. This Decision shall have no bearing upon the Company's rights in these areas."

■ Amoco has presented evidence of the longstanding bargaining history of the parties in support of its position that arbitrability of this dispute is not mandated by the collective bargaining agreement. For

over thirty years the Union has unsuccessfully attempted to negotiate changes in the collective bargaining agreement to limit Amoco's right to contract out work. In addition, since 1963 the Union has filed numerous unfair labor practice charges with the National Labor Relations Board (NLRB) over contracting out disputes. In each instance, the NLRB Regional Director refused to issue a complaint on the Union's charge.

The Union argues that the court may not consider extrinsic evidence such as bargaining history in making its determination of arbitrability. The Union relies on *Local Union No. 483, Int'l Bhd. of Boilermakers v. Shell Oil Co.*, 369 F.2d 526 (7th Cir. 1966), in which a union sought to compel arbitration over a subcontracting dispute. However, the language which the Union quotes in its brief demonstrates that *Shell Oil* is inapposite to the situation in the instant case: "It is not for this court to decide on the facts developed at trial [facts regarding the parties' past disputes over subcontracting] that the Union cannot prevail in arbitration of this part of the grievance." *Id.* at 530. The issue which we decide in this case is *not* whether the Union can prevail at arbitration, but whether the parties are contractually obligated to arbitrate this particular grievance.

In *American Oil*, this court held that bargaining history may properly be considered. 324 F.2d at 907. *See also International Union of Operating Eng'rs v. Associated Gen. Contractors*, 845 F.2d 704 (7th Cir.1988) (in deciding arbitrability court considered evidence of proposed language rejected during collective bargaining agreement negotiations). While bargaining history evidence is not controlling, we believe it is relevant and may properly be considered.

### III. CONCLUSION

When the collective bargaining agreement contains an arbitration clause, as does the agreement in this case, there is a presumption of arbitrability that may only be overcome by "forceful evidence" of an intent to exclude the claim. *Warrior &*

*Gulf,* 363 U.S. at 585, 80 S.Ct. at 1354. We believe Amoco has presented "forceful evidence" sufficient to rebut the presumption of arbitrability. We find that there is not a direct relationship between the toolbox distribution grievance and the 1974 arbitration award, and thus Amoco is not contractually obligated to submit to arbitration in this matter. We reverse and remand to the district court with instructions to enter summary judgment in favor of Amoco.