**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 103, Plaintiff–Appellant,**

**v.**

**INDIANA CONSTRUCTION CORPORATION, Defendant–Appellee.**

**No. 89–1634.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1990.

Decided Aug. 16, 1990.

Rehearing and Rehearing En Banc Denied Sept. 17, 1990.

William R. Groth, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, Ind., Stephen J. Lerch, Levine & Lerch, Fort Wayne, Ind., for plaintiff-appellant.

M. Scott Hall, William T. Hopkins, Gallucci, Hopkins & Theisen, Fort Wayne, Ind., for defendant-appellee.

Before RIPPLE and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

On June 21, 1988, the International Union of Operating Engineers filed a complaint under 29 U.S.C. § 185 requesting the district court to compel arbitration of its dispute with Indiana Construction Corporation. On February 14, 1989, the district court granted Indiana Construction's motion for summary judgment. We now reverse and remand for further proceedings.

# I

## BACKGROUND

### A. *Facts*

Indiana Construction (IC) was the general contractor on a building project in Fort Wayne, Indiana. During the relevant time period, IC was a party to a collective bargaining agreement (also referred to as the Building Construction Agreement) with the International Union of Operating Engineers (Operating Engineers). The agreement contains a prohibition against subcontracting that reads as follows:

> The Employer agrees not to sub-contract or sublet any on-site work covered by this Agreement to any person, firm or corporation which does not pay at least the minimum rates of pay and abides by all apprenticeship standards as set forth in this Agreement together with fringes established herein.

R.2 Ex.A at 11 (Article 15). The agreement also provides for arbitration of disputes involving the agreement, with an exception for disputes involving territorial or craft jurisdiction:

> Should any dispute arise between the Union, or any employee covered by this Agreement, and the Employer concerning the interpretation or application of the terms of this contract the same shall be submitted to a joint arbitration board.... Provided, however, that the arbitration provisions of this contract shall not apply in any way to any dispute

arising between the Union, or Unions, involving territorial or craft jurisdiction. *Id.* at 4–5 (Article 6).

In April 1988, IC subcontracted certain masonry work on the Fort Wayne project to L. Byerly Masonry. Byerly had a collective bargaining agreement with the Laborers Union, but no agreement with the Operating Engineers. Thus, the individual hired by Byerly to run a forklift on the job site as part of the subcontract was a member of the Laborers Union.

Operating Engineer's Business Manager, Dan Smart, sent IC a letter in May 1988, asserting that the forklift operator was paid less than the amount paid to Operating Engineers' workers. Accordingly, Mr. Smart demanded arbitration of the alleged violation of the subcontracting provision of the collective bargaining agreement. In this same letter, Mr. Smart also made the following demand:

> Local Union No. 103 believes Indiana Construction Corp. is responsible for the payments to Local Union No. 103 Fringe Benefit Funds for all hours worked or paid for, the hours the fork lift has been or will be operated in the future, and the difference in the pay rate in accordance with [the agreement].

*Id.* Ex.B. IC refused arbitration, claiming in a letter to Mr. Smart that the dispute was jurisdictional and therefore not subject to arbitration. Operating Engineers then brought this suit to compel arbitration.

### B. *District Court Opinion*

The district court focused on whether the dispute was jurisdictional. If it was, then the claim for arbitration must fail because the arbitration clause exempted disputes involving territorial or craft jurisdiction. The court concluded that, because the Operators Engineers requested payment into its fringe benefit fund, it was claiming the job for its own (*i.e.* that the dispute was jurisdictional):

> Although there is a factual dispute as to whether the Operators Union claimed the forklift work for its members, there is no dispute about the fact that the union is claiming financial compensation for the

forklift work assigned to the Laborers Union members.... [B]y seeking financial compensation based on work performed by the Laborers Union, the Operators Union is claiming that same work as its own, thus creating a jurisdictional dispute.

*International Union of Operating Eng'rs, Local 103 v. Indiana Constr. Corp.*, 706 F.Supp. 667, 673 (N.D.Ind.1989). Accordingly, the district court granted IC's motion for summary judgment.

## II

## DISCUSSION

### A. *Procedural Posture*

This case comes to us on appeal from the grant of summary judgment. We review the grant of summary judgment *de novo;* the moving party (here IC) will prevail only if there is no genuine issue of triable fact and it is entitled to judgment as a matter of law. *PPG Indus., Inc. v. Russell*, 887 F.2d 820, 823 (7th Cir.1989); *Oil, Chemical and Atomic Workers Int'l Union v. Amoco Oil Co.*, 883 F.2d 581, 583–84 (7th Cir.1989); Fed.R.Civ.P. 56(c). Any doubt regarding the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Amoco Oil Co.*, 883 F.2d at 584; *International Union of Operating Eng'rs v. Associated Gen. Contractors*, 845 F.2d 704, 705 (7th Cir.1988).

### B. *Governing Principles*

 It is for the court to determine whether a dispute is subject to arbitration. *AT & T Technologies, Inc. v. Communica-* *tions Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Hutter Constr. Co. v. International Union of Operating Eng'rs, Local 139*, 862 F.2d 641, 644 (7th Cir.1988).[1] An order to arbitrate a grievance ought not to be denied " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1980)); *see also Oil, Chemical and Atomic Workers Int'l Union v. Amoco Oil Co.*, 883 F.2d 581, 584–85 (7th Cir.1989); *Associated Gen. Contractors*, 845 F.2d at 706; *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters*, 812 F.2d 91, 95 (3d Cir.1987). In making the determination whether a particular suit is subject to arbitration, the district court must focus on the collective bargaining agreement in question and must examine all relevant evidence. *AT & T*, 475 U.S. at 651–52, 106 S.Ct. at 1419–20; *see also Amoco*, 883 F.2d at 586–87. As this court determined in a similar summary judgment context, when a collective bargaining agreement contains an arbitration clause, "there is a presumption of arbitrability that may only be overcome by 'forceful evidence' of an intent to exclude the claim." *Amoco Oil*, 883 F.2d at 587 (quoting *Warrior & Gulf*, 363 U.S. at 585, 80 S.Ct. at 1354); *see also Local 232, Allied Indus. Workers v. Briggs & Stratton Corp.*, 837 F.2d 782, 784–86 (7th Cir.1988); *cf. AT&T*, 475 U.S. at 650, 106 S.Ct. at 1419 (discussing presumption of arbitrability); *Butchers, Food Handlers and Allied Workers Union v. Hebrew Nat'l Kosher Foods, Inc.*, 818 F.2d 283, 286 (2d Cir.1987) (if the contract contains an arbitration clause, "the court should resolve any doubt as to whether a particular dispute falls under

1. The Supreme Court in *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), relied on a trio of cases that together established many of the rules related to arbitration provisions in collective bargaining agreements. Those cases, collectively known as the "Steelworkers Trilo- gy," are: *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

that clause in favor of ordering arbitration.")[2] Despite this presumption in favor of arbitration, a court can compel arbitration only in accordance with the parties' contract (generally a collective bargaining agreement). *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974); *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1352.

## C. *The Contract in this Case*

█ In the collective bargaining agreement between IC and the Operating Engineers, a dispute regarding subcontracting would be arbitrable, but a dispute about jurisdiction would not.

The classical jurisdictional dispute is "a dispute between two or more groups of employees over which is entitled to do certain work for an employer." *NLRB v. Radio and Television Broadcast Eng'rs Union, Local 1212,* 364 U.S. 573, 579, 81 S.Ct. 330, 334, 5 L.Ed.2d 302 (1961). One employer has agreements with two or more unions or locals; the employer assigns a particular piece of work to one union or local, and another union or local threatens action unless the employer changes the work assignment. *See, e.g. Georgia–Pacific Corp. v. NLRB,* 892 F.2d 130, 131–32 (D.C.Cir.1989); *J.F. White Contracting Co. v. Local 103 Int'l Bhd. of Elec. Workers,* 890 F.2d 528, 528–29 (1st Cir.1989); *Hutter Constr. Co. v. International Union of Operating Eng'rs, Local 139,* 862 F.2d 641, 644 (7th Cir.1988); C.J. Morris, *The Developing Labor Law* 1249 (2d ed. 1983). A jurisdictional dispute generally places the employer " 'in a cross-fire between two unions.' " *Laborers' Int'l Union v. W.W. Bennett Constr. Co.,* 686 F.2d 1267, 1272 (7th Cir.1982) (quoting *Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 275, 84 S.Ct. 401, 410, 11 L.Ed.2d 320 (1964) (Black, J., dissenting)). In a typical subcontracting dispute, an employer subcontracts a part of the union's work to another employer that does not hire that union's employees. Many subcontracting cases involve a collective bargaining agreement provision that requires the employer to subcontract only to firms that have signed an agreement with the union. *See, e.g. Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 648–49, 650–51, 102 S.Ct. 2071, 2074, 2075, 72 L.Ed.2d 398 (1982); *Hutter Constr. Co.,* 862 F.2d at 642 & n. 4; *Brogan v. Swanson Painting Co.,* 682 F.2d 807, 808 & n. 1 (9th Cir.1982). Such provisions have the obvious effect of ensuring job security to union members employed at the work site.

The facts of this case defy the label of either a stereotypical jurisdictional or subcontracting dispute. The union asserts that it does not claim the forklift job for its workers. The subcontracting provision in its collective bargaining agreement with IC does not require that the subcontractor employ Operating Engineers workers, but only that the subcontractor not pay less to its employees than the wages paid to Operating Engineers workers. If the union is not claiming the work as its own, then this is not a jurisdictional dispute. *See NLRB v. Plasterers' Local Union No. 79,* 404 U.S. 116, 134–35, 92 S.Ct. 360, 371–72, 30 L.Ed.2d 312 (1971); *The Developing Labor Law* at 1254. On the other hand, there is no dispute that the Operating Engineers sought compensation for their members for the forklift work done by the Laborers. The district court thought this latter point was outcome determinative. Our inquiry then is whether, at the summary judgment stage, a request for damages in the form of contribution to the union's fringe benefit fund requires that the union's claim be characterized as a jurisdictional dispute (and thus outside of the arbitration clause). If it does not, then other factors, about which there is genuine dispute, become important.

█ In ascertaining the range of permissible remedies for the violation of a collec-

**2.** This presumption in favor of arbitrability in the summary judgment context corresponds with the general preference for arbitration, which " 'furthers the national labor policy of peaceful resolution of .labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.' " *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 371–72, 104 S.Ct. 1844, 1849, 80 L.Ed.2d 366 (1984)).

tive bargaining agreement, the primary reference must be to the express terms of the contract. In *Hutter Construction,* for example, the arbitrator awarded back-pay—a specific remedy in the collective bargaining agreement—to remedy a subcontracting violation. 862 F.2d at 642 n. 5 & 643.[3] But the collective bargaining agreement in this case does not suggest a range of remedies that an arbitrator might award in the event of a violation of the agreement. Cases decided by this court have made it " 'abundantly clear that where the contract is not explicit concerning the proper remedy, the arbitrator is given wide latitude in fashioning an appropriate remedy.' " *United Elec. Radio and Mach. Workers v. Honeywell, Inc.,* 522 F.2d 1221, 1226 (7th Cir.1975) (quoting *Mogge v. District 8, Int'l Ass'n of Machinists,* 454 F.2d 510, 514 (7th Cir.1971)); *see also Local 879, Allied Indus. Workers v. Chrysler Marine Corp.,* 819 F.2d 786, 790 (7th Cir.1987); *cf. Grigoleit Co. v. United Rubber, Cork, Linoleum and Plastic Workers,* 769 F.2d 434, 441 (7th Cir.1985) (arbitrator has "wide latitude" in fashioning remedy). In this case, the collective bargaining agreement provides that a dispute about the interpretation or application of the agreement "shall be submitted to a joint arbitration board." R.2 Ex.A at 4. As this court has pointed out, including an arbitration clause in a collective bargaining agreement necessarily implies the authority of the arbitration board to find that there has been a breach of the agreement and "further implies the authority to prescribe a remedy which can be said reasonably to cure the breach." *Chrysler Marine Corp.,* 819 F.2d at 790. This broad authority to prescribe a remedy that does not offend the collective bargaining agreement has been recognized by the Supreme Court:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

*United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *see also Miller Brewing Co. v. Brewery Workers Local Union No. 9,* 739 F.2d 1159, 1162–63 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985).

It is clear that damages such as back pay may—in appropriate circumstances—be a remedy for a violation of a collective bargaining agreement. *Hutter Constr. Co.,* 862 F.2d at 646 & 645 n. 17; *Ufi Razor Blades, Inc. v. District 65, Wholesale, Retail, Office and Processing Union,* 610 F.2d 1018, 1023 (2d Cir.1979). Furthermore, in reported arbitration proceedings, backpay is a common remedy for subcontracting violations. *See, e.g. Golden West Broadcasters,* 93 Lab.Arb. (BNA) 691, 699 (1989) (Jones, Arb.); *Inland–Rome Inc.,* 93 Lab.Arb. (BNA) 666, 673 (1989) (Williams, Arb.); *MSB Mfg. Co.,* 92 Lab.Arb. (BNA) 841, 850 (1989) (Bankston, Arb.); *see also How Arbitration Works* at 546 & n. 471. In addition, damages have been measured by the amount of lost contributions to a fringe benefit fund. In *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.,* 839 F.2d 1333 (9th Cir.1988), the union's fringe benefit trust funds brought suit to recover damages resulting from the

---

**3.** *See also Stevens Constr. Corp.,* 52 Lab.Arb. (BNA) 1013, 1014, 1019 (1969) (Yaffe, Arb.) (awarding backpay and fringe benefits in accordance with collective bargaining agreement); F. Elkouri & E.A. Elkouri, *How Arbitration Works* 546 nn. 471 & 472 (4th ed. 1985) (collecting cases in which the arbitrator awarded damages to remedy improper subcontracting in violation of collective bargaining agreement).

employer's breach of the subcontracting provision in their collective bargaining agreement. The district court awarded damages based on the amount that would have been contributed to the fringe benefit funds if the subcontractor had hired union workers, and the Ninth Circuit affirmed. *Id.* at 1335, 1341; *see also Brutoco Eng'g Constr. Inc.*, 92 Lab.Arb. (BNA) 33, 38 (1988) (Ross, Arb.) (directing that a portion of an award resulting from a subcontracting violation be paid to the union's general health and welfare funds).

The only evidence relied upon by the district court in determining that the union claimed the forklift job for itself was the letter by Mr. Smart requesting payment into the union's fringe benefit fund. However, this request by the union must be considered ambiguous. It just as easily could be interpreted as an attempt to quantify the damage to the union for IC's violation of the subcontracting provision in the collective bargaining agreement. As stated above, damages may be awarded in appropriate circumstances. In addition, the district court received two affidavits from union officials that called into question whether the union asserted a right to the job: one denied threatening to picket the job site unless an Operating Engineers worker was given the forklift job, and the other (by the business manager, Mr. Smart) specifically denied that the union ever requested that they receive the forklift job. R.21.[4]

The district court could not conclude that the dispute was jurisdictional—and therefore not subject to arbitration under the terms of the collective bargaining agreement—solely because the union demanded a contribution to its pension fund as compensation for the alleged breach. Such a remedy also would have been permissible for a breach of the subcontracting clause.

Accordingly, the case must return to the district court for further proceedings on the sole issue before the court—whether the dispute is subject to arbitration under the terms of the collective bargaining agreement. In resolving this issue, the district court will apply, as it acknowledged in its opinion and we confirm today, the principles enunciated by the Supreme Court in *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648–51, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986).

### Conclusion

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings.

REVERSED AND REMANDED.

---

**4.** We note that, as part of its summary judgment motion, IC included affidavits supporting its assertion that union officials demanded the forklift job for Operating Engineers employees. The affidavits of two IC superintendents stated that they were approached by the union's business agent, Michael Wall, who threatened to place pickets at the job site unless Byerly arranged to let Operating Engineers employees run the forklift. In addition, IC's vice president/general superintendent stated in an affidavit that Dan Smart claimed that the Operating Engineers union had qualified forklift operators and that they should be operating the forklift. As noted above, the union officials strenuously deny making these declarations. We leave it to the district court to resolve this factual dispute on remand.