INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNION 103, Plaintiff–Appellee,

v.

INDIANA CONSTRUCTION CORPORATION, Defendant–Appellant.

No. 92–1356.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1992.

Decided Jan. 4, 1994.

William R. Groth (argued), Fillenwarth, Dennerline, Groth & Towe, Indianapolis, IN, Stephen J. Lerch, Fort Wayne, IN, for plaintiff-appellee.

M. Scott Hall (argued), William T. Hopkins, Gallucci, Hopkins & Theisen, Fort Wayne, IN, for defendant-appellant.

Before POSNER, Chief Judge, FLAUM, Circuit Judge, and WILLIAMS, District Judge.*

ANN CLAIRE WILLIAMS, District Judge.

This appeal arises out of a dispute over whether International Union of Operating Engineers, Local 103's ("Operators"), grievance against Indiana Construction Corp. ("Indiana Construction") must be arbitrated. Plaintiff-appellee Operators filed suit in federal district court to compel arbitration of its alleged subcontracting grievance. The district court granted summary judgment in Indiana Construction's favor, finding that the grievance was a non-arbitrable jurisdictional dispute. Operators appealed, and this court

reversed, remanding the case to the district court for further proceedings. After a bench trial, the district court determined that Operators' grievance was arbitrable. Defendant-appellant Indiana Construction appeals that determination. We affirm.

## I. *Background*

Indiana Construction was signatory to a collective bargaining agreement with both Operators and Laborers International Union, Local 213 ("Laborers"). Most important here is Operators' collective bargaining agreement, the Building Construction Agreement ("Agreement"), which contains a provision requiring arbitration of any dispute except those involving territorial or craft jurisdiction:

> Should any dispute arise between the Union, or any employee covered by this Agreement, and the Employer concerning the interpretation or application of the terms of this contract the same shall be submitted to a joint arbitration board.... Provided, however, that the arbitration provisions of this contract shall not apply in any way to any dispute arising between the Union, or Unions, involving territorial or craft jurisdiction.[1]

(Plaintiff's Exhibit ("PX") 1, Art. 6, Subpart 3).[2] Also at issue is the Agreement's subcontracting provision which states in relevant part:

> The Employer agrees not to sub-contract or sublet any on-site work covered by this Agreement to any person, firm or corporation which does not pay at least the minimum rates of pay and abides by all apprenticeship standards as set forth in this Agreement together with fringes established herein.

(PX 1, Art. 15, Subpart 3).

In April 1988, Indiana Construction subcontracted masonry work on a Toys "R" Us construction project in Fort Wayne, Indiana

---

* The Honorable Ann Claire Williams, District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. Indiana Construction's collective bargaining agreement with Laborers contains similar provisions for mandatory arbitration, with an exclu-

sion for jurisdictional disputes. (Defendant's Exhibit ("DX") A, Appendix to Brief of Appellant ("AA") 87–89).

2. Jurisdictional disputes are to be resolved by the Impartial Jurisdictional Disputes Boards, or its successor. (PX 1, Art. 7).

to L. Byerly Masonry ("Byerly"). Byerly, who had only signed a collective bargaining agreement with Laborers, had hired Laborers to do certain forklift work on the project. Subsequently, a dispute arose over whether the forklift work had to be performed by a member of Operators. Operators eventually filed a written grievance on May 5, 1988, charging that Indiana Construction violated the Agreement by subcontracting to a firm that did not pay the requisite rates and fringe benefits set forth in the Agreement. Operators requested arbitration, and Indiana Construction refused on the grounds that the grievance was a non-arbitrable jurisdictional claim for work between competing unions.

On June 21, 1988, Operators filed suit in district court to compel arbitration under 29 U.S.C. § 185, alleging that the grievance was a contractual claim. Both parties filed motions for summary judgment. On February 14, 1989, the district court granted Indiana Construction's motion after concluding that, "by seeking financial compensation based on the work performed by the Laborers Union, the Operators Union is claiming that same work as its own, thus creating a jurisdictional dispute." *International Union of Operating Eng'rs, Local 103 v. Indiana Constr. Corp.,* *("Indiana Constr. I")* 706 F.Supp. 667, 673 (N.D.Ind.1989) (AA 35–41).

Operators appealed, and this court reversed and remanded the case to the district court on August 16, 1990. *International Union of Operating Eng'rs, Local 103 v. Indiana Constr. Corp., ("Indiana Constr. II")* 910 F.2d 450, 455 (7th Cir.1990) (AA 42–47). In so doing, we emphasized that:

> The district court could not conclude that the dispute was jurisdictional—and therefore not subject to arbitration under the terms of the collective bargaining agreement—solely because the union demanded a contribution to its pension fund as compensation for the alleged breach. Such a remedy also would have been permissible for a breach of the subcontracting clause. Accordingly, the case must return to the district court for further proceedings on the sole issue before the court—whether the dispute is subject to arbitration under the terms of the collective bargaining

agreement. In resolving this issue, the district court will apply, as it acknowledged in its opinion and we confirm today, the principles enunciated by the Supreme Court in *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648–51, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986).

*Id.* (AA 47).

Upon remand, the district judge conducted a bench trial to resolve disputed factual issues such as whether Operators "claimed the work as its own." After weighing the disputed testimony, the court found *inter alia*, that Operators tried to get Byerly to hire its members for the forklift work, asked Byerly to sign its collective bargaining agreement, and threatened to picket and shut the project down if Operators was not hired. ("Short Appendix to Brief of Appellants ("SA") 4–6). Notwithstanding these facts, the lower court concluded that the grievance was non-jurisdictional and subject to arbitration reasoning that:

> The presence of a jurisdictional dispute at the subcontracting level would not preclude Indiana Construction from complying with the sub-contractor clause of their agreement with the Operators Union. Thus, the Operators Union would have a legitimate grievance against Indiana Construction under the sub-contractor clause of the Building Construction Agreement even if it was also engaged in a jurisdictional dispute with another union.

(SA 10).

Indiana Construction appeals. Specifically, appellant contends that Operators failed to carry its burden of proving the substantive arbitrability of its grievance, and that the district court erred in finding that the grievance should be arbitrated.

## II. *Standard of Review*

■ In reviewing a judgment following a bench trial, this court must accept the trial court's factual findings unless they are clearly erroneous. *Bennett v. Local Union No. 66,* 958 F.2d 1429, 1433 (7th Cir.1992). In the instant case, Indiana Construction does not dispute any of the district court's factual

findings. Rather, appellant takes issue with the district court's application of those facts to the language in the Agreement and the relevant law. Therefore, despite Operators' protestations to the contrary, we review the district court's legal conclusions under the *de novo* review standard. *Id.* at 1434.

### III. *Discussion*

■ "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). However, it is for the court to determine whether a collective bargaining agreement creates a duty to arbitrate. *AT & T*, 475 U.S. at 649, 106 S.Ct. at 1418. In making this determination, the court must focus on the collective bargaining agreement in question and examine all relevant evidence. *AT & T*, 475 U.S. at 651–52, 106 S.Ct. at 1419–20. Moreover, in *AT & T*, the Supreme Court reiterated that

> where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Doubts should be resolved in favor of coverage.

*AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1353). Consequently, this court has held that when a collective bargaining agreement contains an arbitration clause, "there is a presumption of arbitrability that may only be overcome by 'forceful evidence' of an intent to exclude the claim." *Oil, Chemical and Atomic Workers Int'l Union v. Amoco Oil Co.*, 883 F.2d 581, 585 (7th Cir. 1989) (quoting *Warrior & Gulf*, 363 U.S. at 585, 80 S.Ct. at 1354). With these principles in mind, we address appellant's arguments.

### A. The Law of the Case

■ As an initial matter, this court addresses appellant's reliance on the "law of the case" doctrine. In particular, Indiana Construction emphasizes our prior statement that "[i]f the union is not claiming the work as its own, then this is not a jurisdictional dispute." *Indiana Constr. II*, 910 F.2d at 453 (AA 45). Based upon this language, appellant suggests that the dispute *is* jurisdictional (and therefore, non-arbitrable) if Operators *is* claiming the work as its own. Moreover, appellant concludes that the resolution of this single issue and interpretation of the Agreement is "the law of the case." Brief of Appellant at 12. We disagree.

"The gist of the [law of the case] doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir.1991). However, the doctrine "most often applies to issues already fully decided in cases that subsequently re-appear before the rendering court." *Trustees of Indiana University v. Aetna Casualty & Sur. Co.*, 920 F.2d 429, 435 (7th Cir.1990). In other words, the doctrine expresses the courts' general refusal to reopen what has previously been decided. *See Cameo Convalescent Center, Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir. 1986).

In the instant case, this court merely indicated that if Operators did not claim the forklift work, then the grievance was not a jurisdictional dispute. However, we did not hold that there would be a non-arbitrable jurisdictional dispute if the Operators did, in fact, claim the work. To the contrary, we specifically noted that the district court should focus on the collective bargaining agreement and all relevant evidence in deciding whether the grievance is subject to arbitration. *Indiana Constr. II*, 910 F.2d at 452 (AA 44). Accordingly, we remanded the case for the district court to resolve factual disputes and other relevant issues in light of the principles articulated in *AT & T*. Clearly, we did not "fully decide" the issues, and appellant's reliance on the law of the case doctrine is misplaced.

### B. The Rule 52(c) Motion

The only evidence Operators presented during its case-in-chief was the Agreement

and its grievance. Indiana Construction contends that Operators' Complaint should have been dismissed because it failed to carry its burden of proof with just this evidence. Moreover, appellant makes the unsupported assertion that "the law of the case" demands such a result. Brief of Appellant at 16.

■ Presumably, appellant argues that the trial court should have granted its motion under Federal Rule of Civil Procedure 52(c) ("Rule 52(c)").[3] Rule 52(c) provides in pertinent part:

> If during a trial without a jury a party has been fully heard with respect to an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party ..., or the court may decline to render any judgment until the close of all the evidence.

Fed.R.Civ.P. 52(c). Moreover, "[i]n making this determination, the court is within its prerogative 'to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.'" *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1475 (7th Cir.1993) (quoting *Sanders v. General Serv. Admin.*, 707 F.2d 969, 971 (7th Cir. 1983)). However, it is within the trial court's sound discretion to decline rendering judgment until hearing all of the evidence. *See* Fed.R.Civ.P. 52(c).

The trial court's decision to reserve ruling until the close of all of the evidence was certainly not an abuse of discretion in this case. For one, this court affirms the district court's entry of judgment in Operators' favor. Furthermore, we have already rejected appellant's claim that "the law of the case" mandated judgment in its favor.

### C. The Finding of Arbitrability

■ Indiana Construction claims that the trial court's conclusion that the grievance is arbitrable is erroneous in light of the Agreement and the evidence. Brief of Appellant at 25. Specifically, appellant asserts that "this Court stated that the Operators Union's

grievance would not be arbitrable, i.e. involving a 'dispute arising between the Union, or Unions, involving territorial or craft jurisdiction,' if the Operators Union claimed 'the work as its own.'" Brief of Appellant at 19. Consequently, Indiana Construction states that the district court's factual findings show that Operators claimed the work as its own, and insists that the district court specifically found the existence of a jurisdictional dispute. Brief of Appellant at 21.

First, there is no indication from the transcript that the judge specifically found that a non-arbitrable jurisdictional dispute existed under the terms of the Agreement. Also, we note once more, that this court never said that a jurisdictional dispute would exist if Operators claimed the work as its own. *See Indiana Constr. II*, 910 F.2d at 453 (AA 45). However, we did emphasize that "[t]he facts of this case defy the label of either a stereotypical jurisdictional or subcontracting dispute." *Id.* Consequently, we remanded the case for further proceedings and directed the district court to apply the principles enunciated in *AT & T. Id.* at 455. We apply those same principles here.

In *AT & T*, the Court noted that when a collective bargaining agreement contains a broad arbitration clause like the one in the instant case, there is a presumption in favor of arbitration that can only be overcome by an express provision excluding a particular grievance or the "most forceful evidence of a purpose to exclude the claim." 475 U.S. at 650, 106 S.Ct. at 1419. In the present case, Indiana Construction contends that its provision in Article 6 exempting any dispute "involving territorial or craft jurisdiction" is just such an exclusion. We disagree.

The term "jurisdiction" is not defined in the Agreement. Yet, we noted in *Indiana Constr. II* that a classic jurisdictional dispute involves a dispute between two or more unions over which is entitled to do certain work for an employer. 910 F.2d at 453 (citing *NLRB v. Radio and Television Broadcast Eng'rs Union Local 1212*, 364 U.S. 573, 579, 81 S.Ct. 330, 334, 5 L.Ed.2d 302 (1961)). In

---

**3.** Actually, Indiana Construction moved for a directed verdict at the end of Operators' case. (Tr. 22). However, since this case was tried without a jury, this motion is properly characterized as a Rule 52(c) motion. *See* Fed.R.Civ.P. 52(c).

those cases, the employer has agreements with two or more unions, assigns a particular piece of work to one union, and another union threatens action unless the work is reassigned. *Indiana Constr. II,* 910 F.2d at 453. This case does not involve the classic situation because it was the subcontractor that assigned the work, rather than the employer, Indiana Construction. Admittedly, this situation resembles a traditional jurisdictional dispute, but it also resembles a subcontracting dispute—a dispute that arises when an employer subcontracts a part of the union's work to another employer that does not hire that union's employees. *Id.* Consequently, the trial court noted that in cases like the present one, "the distinction between jurisdictional and non-jurisdictional is often a matter of semantics." ·(SA 8–9).

Furthermore, the subcontracting language in the Agreement is far from clear. Although Article 15 provides that Indiana Construction can only subcontract to a firm that pays "at least the minimum rates of pay and abides by all apprenticeship standards," it is unclear how appellant could possibly comply with this provision if it hires a nonsignatory subcontractor.[4] Rather than acknowledging the ambiguity in the contract language, Indiana Construction merely reiterated that it may have to pay one union for work performed by another, and that the Agreement sought to avoid this problem by exempting disputes that "in any way" involve territorial or craft jurisdiction—regardless of the level on which such dispute occurs. Conversely, Operators emphasized that any claims for work occurred at the subcontracting level, and that the Agreement's jurisdictional exemption is limited by the subcontracting provision.[5] However, at oral argument, Operators also admitted that having subcontractors uphold their wage provisions is important for "preserving the work for those [they] represent."

Clearly, these provisions and the motivations behind each are closely intertwined. Since the jurisdictional provision is arguably limited by the subcontracting limitation in Article 15, this court concludes that the Article 6 exception for disputes "involving territorial or craft jurisdiction" cannot be characterized as "an express provision excluding [the] particular grievance" involved here.

4. At oral argument, the following colloquy occurred between the court and counsel for Indiana Construction regarding the subcontracting provision:

THE COURT: I'm asking you what this [the fringe benefit and apprenticeship provision] means. Can't you tell me what it means? COUNSEL: It means what it says your honor. THE COURT: Well, I don't know what it means.

. . . .

THE COURT: Suppose you hire someone who is not a member of one of these unions . . . How do you comply with this paragraph of the agreement? It's easy to see you'd have to pay the minimum rate of pay. But, how do you abide by apprenticeship standards and the fringes if you don't have a member of the union? COUNSEL: It would be impossible for the subcontractor to do that. THE COURT: So . . . this paragraph is a nullity?

. . . .

COUNSEL: The only way that provision could be complied with your honor, as I stated earlier, is if Indiana Construction made the payments for the subcontractor for the hours worked by the subcontractor's employee.

5. Counsel for Operators suggested that the subcontracting clause was a "de facto union signatory" clause (requiring that all subcontractors be signatory to Operators' collective bargaining agreement) for the reasons that the court pointed out. However, counsel could not clearly explain why this case did not involve a jurisdictional dispute:

THE COURT: Now your argument is the reason there is no jurisdictional dispute is that Indiana Construction was perfectly free to hire Byerly or anybody else . . . or use robots to do this work, it could do anything—provided of course, it pays you damages measured by the cost to you of its having violated its clause. I don't understand that as a real option for the company: violate the contract, pay damages, could be enjoined by an arbitrator, could be made to pay punitive damages and so forth. . . . That just doesn't sound realistic. COUNSEL: Well, they're the ones that chose to enter into the collective bargaining agreement. THE COURT: You also signed a jurisdictional dispute clause which we're trying to interpret. COUNSEL: And I've indicated how I believe the court should interpret that jurisdictional exclusion. Limit it to work assignment decisions made by the signatory employer.

*See AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419. That being so, we must determine whether this case presents "forceful evidence" that the parties intended to exclude this grievance from arbitration.[6]

In the instant case, the relevant evidence includes several factual findings supporting appellant's contention that this is a jurisdictional dispute. In particular, after weighing the credibility of witnesses,[7] the trial court found that Operators asked Byerly to sign its collective bargaining agreement, tried to get the forklift work for Operators' members, and threatened to picket and shut the job down if the work was not reassigned. (SA 3–7). In addition, the parties stipulated that the forklift work was covered by both Operators' and Laborers' collective bargaining agreements with Indiana Construction, and that Laborers claimed the forklift work on the Toys "R" Us project as its own pursuant to its collective bargaining agreement.[8] (AA 51, 52, 59). However, the evidence also included the written grievance which charged that Indiana Construction violated the subcontractor clause in Article 15 by subcontracting to a company that did not pay rates of pay and fringe benefits outlined in the Agreement. (PX 2). Moreover, this court has already noted that the remedy sought (contribution to Operators' pension fund) is consistent with either a jurisdictional or a subcontracting claim. *Indiana Constr. II,* 910 F.2d at 455 (AA 47).

In sum, we are left with two contractual provisions which might cover Operators'

grievance: the Article 6 jurisdictional dispute exclusion precluding arbitration, and the Article 15 subcontracting dispute requiring arbitration. In addition, there is significant evidence of a jurisdictional dispute because both unions claimed the forklift work.[9] Moreover, we find Operators' suggestion at oral argument that it was not claiming the work because it "never made a demand on Byerly" disingenuous and inconsistent with the lower court's factual findings regarding Operators' conduct. The court is also mindful of the fact that this dispute between unions over the Toys "R" Us forklift work presents just the kind of situation which Indiana Construction hoped to exempt from arbitration under its "jurisdictional exclusion" in Article 6.

However, the written grievance charges a violation of Article 15. Also, the requested remedy is consistent with a subcontracting dispute. In addition, it appears that Indiana Construction's decision to subcontract work to Byerly implicates the subcontracting provision because Byerly paid Laborers less than the wages provided for in the Agreement. (Tr. 64). Finally, at oral argument, neither party could describe a situation where Indiana Construction could subcontract to a nonsignatory firm without owing damages under the subcontracting provision. Taking these considerations as a whole, we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[10] *Warrior & Gulf,* 363 U.S. at 582–583, 80 S.Ct. at 1353. Therefore, we resolve

---

6. We reject Operators' claim that this case should have been decided on the "facial arbitrability" of the Agreement, rather than extrinsic evidence. First, it does not appear that this argument was made when this case was appealed the first time. (Tr. 5). Moreover, *AT & T* makes clear that the court may consider "express exclusion" in the collective bargaining agreement *"or other forceful evidence."* 475 U.S. at 652, 106 S.Ct. at 1420 (emphasis added).

7. Plaintiff's witnesses included: Dan Smart, Leon Byerly, Timothy Mopper, Robert Bishop, and James Schellenberger. (Tr. 24, 57, 65, 69, 72). Defendant's rebuttal witness was Michael Wall. (Tr. 89).

8. Laborers' collective bargaining agreement was admitted as an exhibit. (DX A).

9. Operators insists that if the district court found any jurisdictional dispute at all, it was at the subcontractor level because Byerly was the one subject to conflicting demands of two or more unions. Brief of Appellee at 5–6.

10. Indiana Construction's authority does not suggest otherwise. Although *Local 513, Int'l Union of Operating Eng'rs v. J.S. Alberici Constr. Co.,* 936 F.2d 390 (8th Cir.1991) and the other cases suggest that the "crux" of a dispute such as this is jurisdictional, this court rules in favor of arbitration because of the ambiguity in the contract, and the presumption of arbitrability discussed in *AT & T.*

our doubt in favor of arbitration.[11]  *See id.*

### Conclusion

For the foregoing reasons, we find that Operators' grievance falls within the arbitration provision in the Agreement.  Accordingly, the opinion of the district court compelling arbitration is AFFIRMED.

---

**11.**  Moreover, this conclusion is consistent with this court's decision in *Hutter Constr. Co. v. International Union of Operating Eng'rs, Local 139,* 862 F.2d 641 (7th Cir.1988).  In that case, the collective bargaining agreement provided that the company could not subcontract to a nonsignatory employer.  However, as is the case here, the construction company decided to subcontract work to a nonsignatory employer, and a dispute arose over whether the union's grievance should be arbitrated.  Although it was a close case, this court held that the union's grievance raised an arbitrable subcontracting dispute, and stated that the union was entitled to the benefit of its collective bargaining agreement.  *Id.* at 644–45.  Here, there is no express "union signatory" clause.  However, the responses elicited at oral argument suggest that the subcontracting clause has the same practical effect as a union signatory clause.  Therefore, the *Hutter* analysis is applicable here.