ESTATE OF CHAYKA: CHAYKA, Appellant, V. SANTINI, Administrator, w.w.a., Respondent.

*No. 219. Argued April 2, 1970.—Decided May 1, 1970.*
(Also reported in 176 N. W. 2d 561.)

104

For the appellant there were briefs and oral argument by *L. William Connolly* of Milwaukee.

For the respondent there was a brief by *Roberts, Boardman, Suhr & Curry* of Madison, attorneys, and *Santini, Jacobs & McDonald* of Ironwood, Michigan, of counsel, and oral argument by *Bradway A. Liddle, Jr.*, of Madison.

ROBERT W. HANSEN, J. We deal here with a joint, mutual and reciprocal will of a husband and wife where, upon the death of the husband, the survivor wife did not revoke the will but did transfer to her second husband as gifts much of the real and personal property awarded her under the will of her first husband.

The first Chayka appeal asked whether the joint will was founded on contract and thus binding on the survivor. We answered that a conclusive inference arises that the joint, mutual and reciprocal will was executed pursuant to a contract binding upon the survivor.[1]

This second Chayka appeal asks whether the survivor of the two contracting parties may give away the property received by her under the joint will, thus defeating the intent of the mutual agreement and joint will that such property of the survivor shall go to the person

[1] *Estate of Chayka* (1968), 40 Wis. 2d 715, 162 N. W. 2d 632. That decision did not reach the issue of what rights or duties arise from the fact of such contract. Footnote 1, stating that "A second issue as to the entitlement to possession of the bearer bonds has become moot." Page 717 refers to an abandonment of an effort to secure the return to the estate of the specific bonds involved, not to a determination of the right of the person to whom they had been given to retain the bonds or the proceeds of sale, if, as appears to be the case here, he has sold them. It should be noted that the new Probate Code alters the principle that an inference of a contract arises from the fact of a joint will. Sec. 26 of ch. 339, Laws of 1969, creates sec. 853.13, Stats., but is not effective until April 1, 1971, ch. 393, Laws of 1969.

designated by the agreement. We answer that transfer by gifts *inter vivos* of a substantial portion of the property received under the joint will must be held to be violative of the agreement of the parties and as a matter of law not made in good faith.

Where two parties contract to make a joint, mutual and reciprocal will, each pledges to the other that he will execute a mutually agreeable will, and will have that will in full force and effect at the time of death. The parties may express such contract in a separate document, state in the joint will that it is a contract, or the fact of contract may be conclusively presumed from the fact of the joint will being executed.[2] Such contract becomes partially executed upon the death of one of the parties to the agreement and the acceptance by the survivor of properties devised or bequeathed under the will and pursuant to the agreement to make such joint will. At this point the contract becomes irrevocable, the survivor having received the consideration promised.[3]

---

[2] "We accordingly conclude that, though the contract inferentially exists, the contract is satisfied by the parties either executing wills that are mutually agreeable or by revoking existing wills for the same purpose. The contract that under these circumstances we find by inference is precisely like the express contract of the parties in *Pederson v. First Nat. Bank* (1966), 31 Wis. 2d 648, 652, 143 N. W. 2d 425, which provided, 'It is . . . agreed. . . that these Wills will not be changed unless it is mutually agreeable to each party.' . . ." *Estate of Hoeppner* (1966), 32 Wis. 2d 339, 344, 345, 145 N. W. 2d 754. *See also: Estate of Schefe* (1952), 261 Wis. 113, 119, 52 N. W. 2d 375, holding, "While we may not overlook nor ignore the terms of the will in considering the question, the important instrument is the agreement; it is essentially the terms of the latter which control. The rights and obligations of the parties are determined by its terms. . . ."

[3] ". . . The performance involved in the *Doyle Case* was complete on the husband's part. Those claiming under his will were the ones seeking to enforce the contract. The contract was fully executed by him. He completely executed his part of the agree-

The will, as a will, remains an ambulatory document, speaking only from the date of death of the maker,[4] but the mutual agreement of the parties, spelled out or conclusively presumed, when partially executed, becomes irrevocable.[5]

Appellant contends that Evelyn Flanagan Chayka complied with her agreement with her first husband by leaving unrevoked the will giving all of the property she possessed at the time of her death to Robert W. Flanagan. This, as another court has well stated it to be, is "a mere play upon words."[6] What she in fact has done has stripped near all of the flesh from the bones, leaving only a skeleton for testamentary disposition to Robert W. Flanagan. This is a compliance in form, not in substance, that breaches the covenant of good faith that accompanies every contract,[7] by accomplishing exactly what the agreement of the parties sought to prevent.

ment by signing the joint will and leaving it in force when he died. . . ." *Kessler v. Olen* (1938), 228 Wis. 662, 669, 280 N. W. 352, 281 N. W. 691; citing *Doyle v. Fischer* (1924), 183 Wis. 599, 198 N. W. 763.

[4] *See Will of Kopmeier* (1902), 113 Wis. 233, 239, 89 N. W. 134; *Will of Johnson* (1921), 175 Wis. 1, 3, 183 N. W. 888; *Estate of Riley* (1959), 6 Wis. 2d 29, 35, 94 N. W. 2d 233.

[5] ". . . It should be borne in mind that it is the contract and not the will that is irrevocable. . . ." *Doyle v. Fischer, supra,* 183 Wis. at 606.

[6] "This, as it seems to us, we must say, is a mere play upon words. To say that a person has fulfilled his agreement to give to another all of his property at his death, in consideration of valuable services performed, by making his will in accordance with such agreement, and then to turn right around and annul and effectually destroy such testamentary provision by conveying away all of his property to another, leaving nothing whatever upon which the will could operate, would be 'keeping the word of promise to the ear and breaking it to the hope.' " *Bruce v. Moon* (1899), 57 S. C. 60, 73, 74, 35 S. E. 415.

[7] "Every contract implies good faith and fair dealing between the parties to it, and a duty of cooperation on the part of both parties." 17 Am. Jur. 2d, *Contracts,* p. 653, sec. 256. *See also:*

It is understandable that a surviving wife, remarrying, may desire, even in a brief period of time between remarriage and her death, to give what she has to her successor husband. It is equally clear that this may well have been the exact predictable change of circumstances against which her first husband sought to provide in agreeing to the execution of a joint, mutual and reciprocal will. The duty of good faith is an implied condition in every contract, including a contract to make a joint will, and the transfers here violate such good faith standard by leaving the will in effect but giving away the properties which the parties agreed were to be bequeathed at the death of both to a designated party. The contract to make a will, once partially executed and irrevocable, is not to be defeated or evaded by what has been termed "completely and deliberately denuding himself of his assets after entering into a bargain." [8]

It is urged that we hold the *inter vivos* transfers here involved to have been fraudulent as a matter of law. If the word fraudulent, as used in this context and applied

---

Sec. 401.203, Stats., providing as part of the Uniform Commercial Code, "Every contract or duty within this code imposes an obligation of good faith in its performance or enforcement;" and sec. 401.201 (19), Stats., defining good faith as "honesty in fact."

[8] "Should it be held that the promisor is always left free to defeat the effect of his promise by completely and deliberately denuding himself of his assets immediately after entering into the bargain it would seem that the contracts could serve very little purpose other than that of being either gambling devices or instruments of fraud and would be unworthy of legal protection. . . .

". . . A party to such a contract should be made to understand clearly that the law does not permit a man to have his cake and eat it too." Sparks, *Contracts to Make Wills* (1956), pages 51, 52. *See also:* 94 C. J. S., *Wills*, p. 881, sec. 119, stating: "Agreements based on valuable consideration to make a particular disposition of property will not be allowed to be defeated by a conveyance to persons who are not bona fide purchasers, during the lifetime of the promisor."

to this situation, is precisely and correctly defined,[9] this could be said. In fact, it has been said.[10] Whether one takes the route of "fraudulent as a matter of law," or, as we have here done, accepted the requirement and standard of good faith in carrying out the contract of the parties, the result is that, as stated by this court:

"When two persons enter into an agreement to make, and do actually make, mutual and reciprocal wills by which each bequeaths her estate to the other, if she survives, and the survivor takes under such a will and accepts the benefit of such a mutual will and accepts the benefit of such a mutual agreement, equity will take such action as may be necessary to give effect to the mutual agreement that the property of the survivor shall go to the person designated by such agreement. . . ."[11]

[9] "Any gift made with actual intent to defraud would be void, but none made without such intent, unless so out of proportion to the rest of his estate as to attack the integrity of the contract, when it would be fraudulent as matter of law. The gift might be so large that, independent of intent or motive, fraud upon the contract might be imputed, or arise constructively by operation of law. Reasonable gifts were impliedly authorized. Unreasonable gifts were not, even if made without actual intent to defraud. In the absence of intentional fraud, the question is one of degree and depends upon the proportion that the value of the gift bears to the amount of the donor's estate." *Dickinson v. Seaman* (1908), 193 N. Y. 18, 25, 85 N. E. 818, 820.

[10] "The basis of the rule of these cases is that where joint wills are made and one of the parties, after the other has died with a will in force as agreed upon, has taken the property and received the benefit of the will of the other, to permit the one to do with the property received from the other otherwise than by the other's will directed would perpetrate a fraud. . . ." *Kessler v. Olen, supra,* pages 668, 669. ". . . In both *Allen* and *Doyle* . . . it would have amounted to fraud to have permitted him to dispose of the property acquired contrary to the agreement by which he acquired it. . . ." *Estate of Rogers* (1966), 30 Wis. 2d 284, 289, 140 N. W. 2d 273.

[11] *Allen v. Ross* (1929), 199 Wis. 162, 164, 225 N. W. 831.

Here the trial court has ordered Jack Chayka to deliver the bearer bonds transferred to him by Evelyn Flanagan Chayka, or to account for the proceeds thereof. The trial court also ordered that the petition of Jack Chayka to terminate certain joint tenancies established by Evelyn subsequent to the death of her first husband be dismissed. The trial court found that the real and personal property involved in such transfers to have been the property of Evelyn Flanagan Chayka, and now the property of her estate. Equity demands and the law supports each of such orders.

*By the Court.*—Order affirmed.