**Richelle PEDDIE, Plaintiff,**

v.

**STERLING JEWELERS, INC., Defendant.**

No. 02–C–0902.

United States District Court, E.D. Wisconsin.

Sept. 9, 2003.

Alaw C. Olson, New Berlin, WI, for Plaintiff.

David J. Duddleston, Minneapolis, MN, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Richelle Peddie, a former employee of defendant Sterling Jewelers, Inc., brought this wrongful discharge suit in state court, and defendant removed the case based on diversity of citizenship. Defendant now moves for summary judgment arguing that plaintiff did not submit her claim to its mandatory alternative dispute resolution ("ADR") program within the 300 day limitation period established by the program.[1] In the alternative, defendant requests that I stay the present case and refer the dispute to its ADR program. Plaintiff opposes defendant's summary judgment motion but does not object to referring the dispute to defendant's ADR program.

## I. JURISDICTION

The parties do not address the issue of the court's jurisdiction, but I must do so because federal courts are obliged to police their own jurisdiction. *Mkt. St. Assocs. Ltd. P'ship & Orenstein v. Frey*, 941 F.2d 588, 590 (7th Cir.1991). A state court defendant may remove an action to federal court if the action could have been initiated in federal court. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332(a)(1), federal courts have jurisdiction where the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. The party invoking federal jurisdiction has the burden of establishing it.

---

1. Defendant originally characterized its motion as a motion to dismiss under Fed. R.Civ.P. 12(b)(6). However, both parties submitted supporting affidavits; thus, pursuant to Rule 12(b), I converted the motion to one for summary judgment under Fed.R.Civ.P. 56 and gave the parties reasonable opportunity to present all pertinent material.

*Holcombe v. Smithkline Beecham Corp.,* 272 F.Supp.2d 792, 794 (E.D.Wis.2003).

 Plaintiff is a citizen of Wisconsin, and defendant is an Ohio corporation whose principal place of business is Ohio; thus, the parties are diverse. With respect to the amount in controversy, under Wis. Stat. § 802.02(1m), a plaintiff in a tort case is not permitted to specify in the complaint the amount of damages sought. In cases like the present one, where the complaint is indeterminate concerning the amount in controversy, federal jurisdiction will be found if there is proof to a "reasonable probability that the claim is in excess of the jurisdictional amount." *Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir.1997); *Shaw v. Dow Brands,* 994 F.2d 364, 366 n. 2 (7th Cir. 1993). Defendant relies on the allegations in plaintiff's complaint in which plaintiff states that she incurred lost wages, benefits, advancement opportunities and emotional distress. Plaintiff does not oppose removal and has submitted nothing indicating that she believes that her claim is worth less than $75,000. Thus, based on plaintiff's allegations, I conclude that the jurisdictional requirement is satisfied.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), courts should act with caution in granting summary judgment, *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248, 106 S.Ct. 2505.

 In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991)

## III. FACTS

Defendant operates retail jewelry stores throughout the United States. In 1989, defendant hired plaintiff as a salesperson in its Osterman store in Brookfield, Wisconsin. In 1998, for the purpose of dealing with disputes with its employees, defendant instituted a mandatory ADR program known as "RESOLVE." In a brochure describing the program, defendant stated that its purpose was to provide "employees with a fast, fair, private and inexpensive way to handle employment disputes." (Avello Aff. Ex. A at 2.) The brochure stated that the program had "many benefits" including "all the remedies and awards otherwise available through the ju-

dicial system," and it introduced "the RE-SOLVE Program Administrator." (Id.)

The first step in the program was for the employee to "contact the RESOLVE Program Administrator and arrange to complete a RESOLVE Program Claim Form" within 300 days of the alleged wrongful action. (Id. at 5.) Defendant would then investigate the claim and propose a resolution. If the employee was not satisfied, she could invoke the second step by appealing within thirty days, and an outside mediator or review panel would then hear the claim. If the employee was unsatisfied with the mediator's decision, she could move to the third step, arbitration, by appealing within thirty days. Under the third step, the parties would jointly select an arbitrator whose decision would be final and binding.

In June 1998, defendant held a mandatory meeting to introduce the program to employees, which plaintiff attended. Subsequently, defendant provided brochures about the program, displayed posters in store restrooms and described the program in the employee handbook.

Plaintiff states that defendant advised her that it had a policy that "any manipulation of sales, fictitious sales, credit approval system, etc. to influence the achievement of quota is absolutely not permitted." (Pl.'s Aff. ¶ 3.) She further states that in November 1999 and on numerous subsequent occasions, her supervisor violated the above policy by manipulating sales data, creating false sales records and violating Rolex watch policies. Plaintiff also states that she reported her supervisor's conduct to management and was subsequently harassed by her supervisor and the district manager and ultimately discharged.

Plaintiff states that during the week of May 19, 2000, in an effort to resolve her complaints about her treatment, she personally contacted the RESOLVE program administrator, Mike Lynch. She states that Lynch did not advise her that she had to formally and specifically ask for the RESOLVE process and did not give her a RESOLVE complaint form.

On May 18, 2000, plaintiff's then-counsel, Daniel O'Brien, faxed a letter to Lynch stating as follows:

Confirming my conversation with Rick Wellman of May 18, 2000 please be advised that we have been retained to represent Ms. Richelle Peddie. This is being faxed to you at his request.

At the time of our conversation we requested that Ms. Peddie be allowed to transfer to the Shaw's store in Brookfield Square, so that she would no longer have to work with Heidi at the Osterman store. The issues and problems with Heidi and Richelle have been well documented, and I will not rehash those at this time. Suffice to say, that this appears to be the easiest solution to what could otherwise become a very messy, expensive and time consuming issue. My client feels that constructive termination has in fact occurred with regard to the Osterman store because of Heidi's conduct. Rather than pursuing these avenues, she is willing to go to the Shaw's store and continue with the company.

I look forward to your response.

(Lynch Aff. Ex. A.)

On May 19, 2000, Lynch responded as follows:

As you know, I spoke to Richelle earlier this week. She presented few facts and focused on perceptions and assumptions. She called to complain about Heidi, (a current co-worker) and their personality conflict.

Richelle provided me with an alleged witness who would collaborate Heidi's recent unacceptable conduct. The wit-

ness had no facts but did say that both sides engage in *"petty bickering."*

Richelle alleged that Heidi violated policy last fall. Richelle provided me with information that I have turned to our Loss Prevention department for follow up.

Richelle claims that Heidi is blackmailing her. I suggested that Richelle contact the local police department.

Richelle has no legal claims and if she did, she in fact is subject to Sterling's alternative dispute resolution program, RESOLVE.

Sterling has no knowledge of any unlawful conduct and rejects your clients [sic] demands.

Your client has not been terminated and is currently actively scheduled at store # 164.

If you and your client want to waste a lot of time and much expense, I'd be happy to engage you as I have an abundance of resources available to me to deal with frivolous nonsense claims.

(Pl.'s Aff. Ex. A.)

Plaintiff states that she found Lynch's letter "threatening." (Pl.'s Aff. ¶ 9.) She also states that her supervisor continued to harass her causing her to become severely depressed and that, on May 26, she was given a leave of absence not to exceed thirty days because of stress and depression.

Plaintiff states that on June 26, she notified defendant of her intention to return to work but that, on July 7, defendant terminated her, stating that she had been off work for more than thirty days.

On March 13, 2001, plaintiff filed an employment discrimination charge against defendant with the Equal Employment Opportunity Commission ("EEOC") and the state Equal Rights Division ("ERD") alleging gender discrimination based on pregnancy. On May 29, 2002, the EEOC dismissed the charge based on a finding of no probable cause and the ERD did likewise. While the charge was pending, defendant did not mention the RESOLVE program.

On August 15, 2002, plaintiff brought the present action in state court, and on September 13, 2002, defendant removed it. Defendant did not mention the RESOLVE program until October 28, 2002, when it brought the motion that is before me now.

## IV. DISCUSSION

Under the RESOLVE program, an employee has 300 days from the date her claim arose to initiate the dispute resolution process. Defendant argues that plaintiff failed to timely utilize the RESOLVE process and that, therefore, the present case should be dismissed or, alternatively, stayed while the dispute is addressed by RESOLVE. Plaintiff makes a number of arguments in response. However, I need not address all of them because, even assuming that plaintiff failed to timely invoke the RESOLVE process, I find that a reasonable jury could conclude that such failure was excused by defendant's breach of the implied covenant of cooperation that was part of its agreement with its employees to resolve disputes by ADR.

Agreements to utilize an ADR process are contracts between an employer and its employees and are governed by the principles of state contract law. 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In the present case, all relevant events occurred in Wisconsin, thus, the agreement is governed by Wisconsin law. *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 733 (7th Cir.2002). Wisconsin law imposes on the parties to a contract an obligation to cooperate and to deal with each other fairly and in good faith. *Estate of Chayka,* 47 Wis.2d 102, 107 n. 7, 176 N.W.2d 561 (1970).

The duty of good faith and fair dealing has been defined as follows:

> The phrase "good faith" is used in a variety of contexts, and its meaning varies somewhat with the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness and reasonableness.

*Restatement (Second) of Contracts* § 205 cmt. a (1981); *see also* Emily M.S. Houh, *Critical Interventions: Toward an Expansive Equality Approach to the Doctrine of Good Faith in Contract Law,* 88 Cornell L.Rev. 1025 (2003).

■ The duty to cooperate may be breached if a party complies with its obligations under a contract in form but not in substance, *Estate of Chayka,* 47 Wis.2d at 107, 176 N.W.2d 561, if a party fails to exercise its discretion concerning how to perform the contract in a reasonable way, Howard O. Hunter, *Modern Law of Contracts* § 10.9 (Rev. ed.1999), or by other similar actions:

> Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct is justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Restatement (Second) of Contracts* § 205 cmt. d (1981).

■ In determining whether a party has breached the covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract but also any course of performance or course of dealing that may exist between the parties. 23 Richard A. Lord, *Williston on Contracts* § 63.21 (4th ed.2002). Thus, whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends on the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact. *Id.*

■ In the present case, a reasonable jury could find that defendant violated its duty of good faith and fair dealing in any of several ways, including by failing to reasonably exercise its discretion under the contract and/or by egregiously evading the spirit of the bargain. In assessing defendant's performance of its duty to cooperate, I note that the agreement between it and its employees to resolve disputes through an ADR program was established by defendant unilaterally and only shortly before the dispute with plaintiff occurred. Thus, defendant's employees, including plaintiff, did not have a hand in creating the program or experience in operating under it. Under these circumstances, when employees brought complaints to defendant, defendant was obliged to explain to them how to invoke the program.

In the present case, plaintiff states that, during the week of May 19, 2000, she personally brought her complaint to the attention of the RESOLVE program administrator and that he neither mentioned the program or provided her with a complaint form. Taking plaintiff's statement as true, as I must, defendant's failure was

inconsistent with its duty to cooperate with plaintiff to implement the program in a mutually satisfactory way. Defendant's brochure describing the RESOLVE program stated that the first step was for the aggrieved employee "to contact the RESOLVE Program Administrator and arrange to complete a RESOLVE Program Claim Form." (Avello Aff. Ex. A at 5.) Here, plaintiff contacted the program administrator, but he made no effort to assist her in arranging to complete a claim form.

A reasonable factfinder could conclude that, in failing to assist plaintiff, the administrator did not reasonably exercise the discretion that he retained under the contract, i.e., the discretion as to how to respond to an employee complaint. The administrator could have, but did not, advise plaintiff of her rights under the RESOLVE program and could have, but did not, provide her with a RESOLVE claim form. Defendant's non-response might also be reasonably regarded as an evasion of the spirit of defendant's agreement with its employees. Additionally, the administrator's silence and inaction might well have had the effect of deceiving plaintiff. *See Mkt. Street Assocs. Ltd.,* 941 F.2d at 594 (stating that after a contract is entered into, the parties are in a cooperative relationship, and silence is apt to be deceptive).

Defendant's May 19 response to plaintiff's counsel's fax requesting that plaintiff be transferred to another store is further evidence of defendant's failure to cooperate. To say that such response might be regarded as unreasonable is putting it mildly. Apparently finding provocative plaintiff's counsel's suggestion that the case might be "messy, expensive and time consuming" (Lynch Aff. Ex. A), the program administrator grossly overreacted to what, overall, was a relatively innocuous letter. It would not be unreasonable to construe his response as a statement that the RESOLVE program would be of no use to plaintiff and as contradicting the representation in the RESOLVE brochure that the program had "many benefits" including "all those available through the judicial system." (Avello Aff. Ex. A at 2.) This conclusion is particularly reinforced by the last sentence of the letter: "If you and your client want to waste a lot of time and much expense, I'd be happy to engage you as I have an abundance of resources available to me to deal with frivolous nonsense claims." (Pl.'s Aff. Ex. A.) This sentence may be unsurpassed as a model of how not to handle an employee's complaint.

Finally, at no time between defendant's May 19 response and the filing of the present motion did defendant mention the RESOLVE program to plaintiff.

Thus, a reasonable jury could conclude that defendant violated the implied covenant of good faith and fair dealing. A contracting party cannot use its own breach to gain an advantage by impairing the rights conferred upon the other contracting party. *Mkt. Street Assocs. Ltd.,* 941 F.2d at 592. Thus, plaintiff's failure to timely invoke the RESOLVE program may be excused by defendant's violation of its duty to cooperate with plaintiff in performing the agreement. *Id.* at 594–95. Excusing plaintiff's failure is particularly appropriate here because the contract at issue is one shortening the applicable statute of limitations. When one of the parties does something that makes it inequitable to hold the other party to the shortened period, there is no social interest in preventing the period from being enlarged. *Doe v. Blue Cross & Blue Shield United of Wis.,* 112 F.3d 869, 877 (7th Cir.1997). Thus, defendant's motion for summary judgment must be denied.

As an alternative form of relief, defendant requests that, pursuant to 9 U.S.C.

§ 3, I refer this dispute to the RESOLVE program. Plaintiff concurs with this proposal.[2] Therefore, for the reasons stated, plaintiff's dispute with defendant will be stayed and will be referred to defendant's ADR program.

## V. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendant's motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion to stay the case pending resolution of the employment dispute by the RESOLVE program is **GRANTED**.

**FINALLY, IT IS ORDERED** that plaintiff's motion to compel and stay briefing schedule is **DENIED** as **MOOT**.

---

**2.** To be sure, plaintiff would prefer to avoid the RESOLVE program altogether, and makes two arguments as to why she should be permitted to do so: (1) that, because of the administrator's hostility, it would be futile to require her to go through the program; and (2) that, by failing to mention RESOLVE in the EEOC proceeding, plaintiff waived her right to bring the matter up now. However, plaintiff's futility argument fails because, even if the administrator is hostile to her, he will not be involved in the second and third steps of the program, mediation and arbitration. Plaintiff's waiver argument also fails because her wrongful discharge claim was not at issue before the EEOC, thus, defendant was not obliged to mention the RESOLVE program.