# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 9, 2024

**Samuel A. Christensen**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.    2023AP366** | Cir. Ct. No.  2022IN55 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS**<br>**DISTRICT III** |

IN RE THE ESTATE OF ALMA E. ALVIS:

LEROY F. ALVIS, JR.,

    APPELLANT,

  V.

RIAN ALVIS,

    RESPONDENT.

APPEAL from an order of the circuit court for Marathon County: LAMONT K. JACOBSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This appeal involves the circuit court's interpretation of the joint will of LeRoy F. Alvis, Sr., and Alma E. Alvis and the court's interpretation of the anti-lapse statute, WIS. STAT. § 854.06 (2021-22).[1] The court determined that under the joint will, and by operation of the anti-lapse statute, Rian Alvis is entitled to her deceased father's share of Alma's estate. LeRoy F. Alvis, Jr., ("Robbie")[2] appeals from the court's order, arguing that the anti-lapse statute does not apply because: (1) the joint will creates a class of beneficiaries that is limited to Alma and LeRoy's children, and the members of that class are contingent beneficiaries under the joint will; and (2) the joint will is not a revocable governing instrument. We reject these arguments and affirm.

## BACKGROUND

¶2 Alma and LeRoy were husband and wife and had five children. On October 15, 1991, Alma and LeRoy signed a handwritten document entitled "Last Will and testimony of LeRoy F. Alvis Sr. and Alma E. Alvis" (hereinafter, "the joint will"). The joint will stated that on the death of either spouse, his or her entire estate would pass to the surviving spouse. The joint will further provided that if the spouses "die[d] together," their home should be sold at fair market value and "divided to all 5 children"; their cars, tractor, and "big tool[s]" should be "sold at fair market value [and] divided"; their insurance, bonds, IRAs, and CDs should

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

The individuals involved in this appeal share the last name "Alvis." To avoid confusion, after the first reference to each individual, we will refer to that individual by his or her first name.

[2] Consistent with the parties' briefs, we refer to LeRoy F. Alvis, Jr., as "Robbie." We refer to LeRoy F. Alvis, Sr., as "LeRoy."

be "divided"; and, with respect to their "household items" and "other items," "the 5 kids can take what each wants, if it can be settled with our Executor[']s approval, [other]wise sold [and] then divided."

¶3    Danny Alvis, one of Alma and LeRoy's five children, died in April 2011. Alma and LeRoy took no action to change or update the joint will following Danny's death. LeRoy subsequently died in September 2011, and Alma died in June 2013. Probate proceedings, however, were not commenced until March 16, 2022. On that date, Robbie filed an application for informal administration of Alma's estate. The application listed Rian, Danny's daughter, as an "additional interested person[]" but asserted that she was "not a beneficiary" under the joint will. The four surviving Alvis children signed "Waiver and Consent" forms consenting to the admission of the joint will to probate.

¶4    On April 13, 2022, Rian filed a demand for formal proceedings for the administration of Alma's estate. Following a proof of will hearing, the joint will was admitted to probate. The parties then filed briefs regarding the interpretation of the joint will. Specifically, the parties' briefs addressed whether Rian was entitled to Danny's share of Alma's estate. The parties agreed there were no disputed issues of fact.

¶5    In a written decision, the circuit court concluded that upon the surviving spouse's death, the joint will provided for an outright transfer of that spouse's estate to five specific individuals—namely, Alma and LeRoy's five children. The court reasoned, however, that the joint will "says nothing about what to do when one of [the five children] has already died." According to the court, this "gap left in the will is what the anti-lapse statute was intended to fill. And according to that statute, Rian Alvis is entitled to her father's share of the

estate." The court therefore ordered that Rian "qualifies as a beneficiary under the [joint] will in place of her father, Danny Alvis." Robbie now appeals.

## DISCUSSION

¶6 This appeal requires us to interpret both the joint will and the anti-lapse statute and to apply their provisions to an undisputed set of facts. "The construction of a will is a question of law we review without deference to the [circuit] court." *Firehammer v. Marchant*, 224 Wis. 2d 673, 676, 591 N.W.2d 898 (Ct. App. 1999). Similarly, "[t]he interpretation and application of a statute to an undisputed set of facts are questions of law that we review independently." *McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273.

¶7 "The rights under a will of a beneficiary who predeceases the testator are governed by [WIS. STAT. §] 854.06"—commonly known as the anti-lapse statute. WIS. STAT. § 853.27. As relevant here, the anti-lapse statute applies to "revocable provisions in a governing instrument executed by the decedent that provide for an outright transfer upon the death of the decedent to … issue of a grandparent."[3] Sec. 854.06(2)(a). If a transferee under such a provision "does not survive the decedent but has issue who do survive, the issue of the transferee take the transfer per stirpes, as provided in [WIS. STAT.

---

[3] The parties do not dispute that the joint will provides for a transfer upon the surviving spouse's death to the "issue of a grandparent." *See* WIS. STAT. § 854.06(2)(a). The term "issue" means "children, grandchildren, great-grandchildren, and lineal descendants of more remote degrees." WIS. STAT. § 851.13. The joint will provides for a transfer of the surviving spouse's property to Alma and LeRoy's five children, who are the great-grandchildren of Alma's and LeRoy's grandparents.

§] 854.04(1)."⁴  Sec. 854.06(3).  The anti-lapse statute does not apply, however, if: (1) "[t]he governing instrument provides that a transfer to a predeceased beneficiary lapses"; (2) "[t]he governing instrument designates one or more persons, classes, or groups of people as contingent transferees, in which case those transferees take in preference to" the deceased beneficiary's issue; or (3) "the person who executed the governing instrument had an intent contrary to" the anti-lapse statute.  Sec. 854.06(4).

¶8      This court previously interpreted and applied the anti-lapse statute in *Firehammer*.⁵  There, the testator's will split the residue of his estate into seven shares, with each of his two daughters receiving one share.  *Firehammer*, 224 Wis. 2d at 675.  The will further provided that if any beneficiary died within five months after the testator, that beneficiary's interest should be disposed of as though the beneficiary had predeceased the testator.  *Id.*  One of the testator's daughters died within five months after his death, and the personal representative disbursed her share of the estate to her son, pursuant to the anti-lapse statute.  *Id.* The testator's surviving daughter challenged the distribution, arguing that the anti-lapse statute did not apply and the deceased daughter's share should have been divided among the six surviving beneficiaries.  *Id.* at 675-76.

---

⁴ When a statute or governing instrument calls for property to be distributed to a designated person's issue "per stirpes," "the property is divided into equal shares for the designated person's surviving children and for the designated person's deceased children who left surviving issue."  WIS. STAT. § 854.04(1)(a).

⁵ The *Firehammer* court interpreted a previous version of the anti-lapse statute, WIS. STAT. § 853.27 (1995-96).  *See Firehammer v. Marchant*, 224 Wis. 2d 673, 675, 591 N.W.2d 898 (Ct. App. 1999).  The court acknowledged that the probate code had recently been revised and that the revisions "were not in effect at the time of this case."  *Id.* at 675 n.1 (citing 1997 Wis. Act 188).  Nevertheless, the court stated that "the result would be the same under the new anti-lapse statute, [WIS. STAT.] § 854.06."  *Firehammer*, 224 Wis. 2d at 675 n.1.

¶9 On appeal, we concluded there was "no ambiguity" in the will's provision stating that the interest of any beneficiary who died within five months after the testator should be disposed of as though the beneficiary had predeceased the testator. *Id.* at 677. We then observed that, under the anti-lapse statute, "if a relative is a beneficiary under the will, predeceases the testator[,] and has issue who survive the testator," then those issue are entitled to the deceased beneficiary's share, unless the will indicates a contrary intent. *Id.* In other words, "if a beneficiary predeceases the testator, the anti-lapse statute works to give the [beneficiary's] share to the issue, not to the surviving beneficiaries, unless a contrary intent is clearly established." *Id.* at 678. We further observed that the testator was presumed to know the law and, therefore, "knew about the anti-lapse statute." *Id.* at 677. Despite that knowledge, the testator's will did not contain any "provision for a predeceased beneficiary." *Id.* We reasoned that, if the testator "had intended that a deceased beneficiary's share be returned to the residue to be split six ways, he would have said so." *Id.* at 678. Because he did not, we concluded that the anti-lapse statute controlled, and the deceased daughter's share of the testator's estate was properly distributed to her son. *Id.*

¶10 We agree with Rian and the circuit court that ***Firehammer*** is directly on point. In this case, the joint will provided that following the deaths of both Alma and LeRoy, their property would be divided between their five children. The joint will did not address what would happen to any child's share if that child predeceased the surviving spouse. Alma and LeRoy are presumed to have known about the anti-lapse statute. *See id.* at 677. If they had intended a deceased child's share to be returned to the residue to be split four ways between the remaining children, they could have included a provision to that effect in the joint will; however, they did not do so. *See id.* at 678. In addition, they failed to amend the

6

joint will following Danny's death in 2011. "[T]he anti-lapse statute controls unless a contrary intent is clearly expressed by the testator," *see id.*, and the joint will contains no such expression of a contrary intent. Accordingly, the circuit court properly determined that Rian was entitled to receive Danny's share of Alma's estate.

¶11 Robbie argues that the circuit court's decision is erroneous because the joint will "created a 'class' of beneficiaries" that included only Alma and LeRoy's five children, and the joint will "makes no reference to grandchildren or any heirship rights beyond the class of 'children' (or 'kids')." Because the joint will "does not use words like 'right of representation' or 'per stirpes,'" Robbie asserts that it "limits the class to 'children' (or 'kids') who were five in number at the time the [j]oint [w]ill was done," such that "[w]hen one child subsequently died, the class of children to 'divide' [the estate between] became four." In other words, Robbie argues that in the event that any of the five children predeceased the surviving spouse, the remaining children were "contingent beneficiaries" with respect to the deceased child's share of the estate. Robbie therefore asserts that the anti-lapse statute does not apply.

¶12 As an initial matter, we agree with the circuit court that the joint will provided for an "outright transfer" of five shares of the estate to five specific people—namely, Alma and LeRoy's five children—rather than creating a "class" of beneficiaries. As the court noted, "The will defined the beneficiaries in a collective way, referring to 'all 5 children' and '[t]he 5 kids' rather than naming all five in each instance, but there is no doubt that the will identified five individual persons as beneficiaries."

¶13 Regardless, Rian correctly notes that the term "[p]rovision in a governing instrument" in the anti-lapse statute includes "[a] share in a class gift only if a member of the class dies after the execution of the instrument." *See* WIS. STAT. § 854.06(1)(a)2. Here, it is undisputed that Danny died after Alma and LeRoy executed the joint will. As such, even if the joint will is construed as creating a class gift to the five children, the anti-lapse statute applies unless one of the exceptions in § 854.06(4) bars its operation.

¶14 As relevant here, WIS. STAT. § 854.06(4)(a)2. provides that the anti-lapse statute does not apply if "[t]he governing instrument designates one or more persons, classes, or groups of people as contingent transferees, in which case those transferees take in preference to" the deceased beneficiary's issue. Robbie contends that this exception applies because the joint will "designates the class of children as the contingent beneficiaries" in the event that any of the five children predeceases Alma and/or LeRoy.

¶15 In essence, Robbie asserts that any time a will includes a class gift, the mere creation of the class is sufficient to designate the surviving class members as contingent transferees in the event that one of the class members predeceases the testator. Robbie cites no legal authority in support of this proposition, however, and we conclude that it is contrary to the plain language of WIS. STAT. § 854.06(4)(a)2. That subdivision applies when a governing instrument "designates" one or more persons, classes, or groups as contingent transferees. The word "designate" means "to indicate and set apart for a specific purpose, office, or duty." *Designate*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/designate (last visited Jan. 5, 2024).

¶16    Here, the joint will merely provides that following the deaths of Alma and LeRoy, their estate is to be divided between their five children. The joint will contains no provision stating how any child's share should be distributed in the event that he or she predeceases Alma and/or LeRoy. The joint will does not, for instance, state that the share of any child who predeceases the surviving spouse shall be divided between the couple's remaining children. Under these circumstances, the joint will does not "indicate and set apart" the remaining children as contingent transferees.

¶17    Robbie also asserts that the five children are contingent transferees for purposes of WIS. STAT. § 854.06(4)(a)2. because the joint will "bequeathed everything to the surviving spouse as primary beneficiary," and "then in the event the primary beneficiary predeceases, the contingent beneficiary is the '5 children.'" We agree with the circuit court, however, that this "is simply the nature of a joint will." What matters, for purposes of § 854.06(4)(a)2., is not that the joint will granted the five children shares of the estate following the surviving spouse's death; the salient fact is that the joint will did not designate any persons, classes, or groups of people as contingent transferees *in the event that one or more of the five children predeceased the surviving spouse*. As Rian correctly notes, nothing in the joint will "addresses a contingency related to any of the five children such as the death of one or more [of the children] prior to the death of the second spouse to die."

¶18    Alternatively, Robbie argues that the anti-lapse statute does not apply because the joint will is not a revocable governing instrument. As noted above, the anti-lapse statute applies only to "revocable provisions in a governing instrument." WIS. STAT. § 854.06(2). Citing *Chayka v. Santini*, 47 Wis. 2d 102, 176 N.W.2d 561 (1970), and *La Crosse Trust Co. v. Storandt*, 54 Wis. 2d 296,

195 N.W.2d 485 (1972), Robbie asserts that joint wills "become 'irrevocable' upon the first spouse's death."

¶19  In *Chayka*, our supreme court held that when two parties contract to make a joint will, their contract "becomes partially executed upon the death of one of the parties to the agreement and the acceptance by the survivor of properties devised or bequeathed under the will and pursuant to the agreement to make such joint will," and at that point, "the contract becomes irrevocable, the survivor having received the consideration promised." *Chayka*, 47 Wis. 2d at 106.  Citing *Chayka*, our supreme court subsequently stated in *La Crosse Trust Co.* that "[a] joint will is a contract which becomes irrevocable at the time one party dies." *See La Crosse Trust Co.*, 54 Wis. 2d at 301.

¶20  As the *Chayka* court acknowledged, however, the probate code was amended in 1969.  *Chayka*, 47 Wis. 2d at 105 n.1.  The new probate code—and, specifically, WIS. STAT. § 853.13, which went into effect on April 1, 1971— "alter[ed] the principle that an inference of a contract arises from the fact of a joint will." *Chayka*, 47 Wis. 2d at 105 n.1.  In its current form, § 853.13 provides:

> (1)  A contract to make a will or devise, not to revoke a will or devise or to die intestate may be established only by any of the following:
>
> > (a)  Provisions of a will stating the material provisions of the contract.
> >
> > (b)  An express reference in a will to a contract and extrinsic evidence proving the terms of the contract.
> >
> > (c)  A valid written contract, including a marital property agreement under [WIS. STAT. §] 766.58(3)(e).
> >
> > (d)  Clear and convincing extrinsic evidence.

(2)  The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills.

¶21     Applying WIS. STAT. § 853.13 to the undisputed facts of the instant case, there are no provisions in the joint will stating the material provisions of a contract not to revoke the joint will, *see* § 853.13(1)(a); the joint will does not expressly reference the existence of a separate contract not to revoke the joint will, *see* § 853.13(1)(b); no valid written contract not to revoke the joint will has been produced, *see* § 853.13(1)(c); and Robbie has not presented clear and convincing extrinsic evidence of a contract not to revoke the joint will, *see* § 853.13(1)(d). The execution of the joint will, in and of itself, does not create a presumption of a contract not to revoke the joint will. *See* § 853.13(2).  Under these circumstances, we reject Robbie's argument that the joint will is irrevocable and that, as a result, the anti-lapse statute cannot apply.  Furthermore, we note that by failing to respond to Rian's argument regarding § 853.13, Robbie has conceded that the joint will is not irrevocable under that statute. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

¶22     In summary, we conclude the circuit court properly determined that the anti-lapse statute applies to the joint will and that, pursuant to the anti-lapse statute, Rian is entitled to Danny's share of Alma's estate.  We therefore affirm.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

11